UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

United States Courts
Southern District of Texas
FILED

JUL 2 7 2005

Michael N. Milby, Clerk

| | |
|---|---|
| JAMES MOODY AND COLLEEN MOODY | § |
| | § |
| VS. | § |
| | § |
| PALM HARBOR MANUFACTURING, L.P., | § |
| PALM HARBOR HOMES I, L.P. | § |
| AND PALM HARBOR HOMES, INC., | § |
| BOTH DBA PALM HARBOR VILLAGES, | § |
| CLW GENERAL CONTRACTORS, L.C., | § |
| AND BOBBY FREEMAN | § |
| DBA FREEMAN MOBILE HOME MOVING | § |

CASE NO. H-05-2610

## ORIGINAL COMPLAINT FOR DAMAGES
## AND FOR DECLARATORY ACTION

James Moody and Colleen Moody (collectively, Plaintiffs) file this Original Complaint, complaining of Palm Harbor Manufacturing, L.P., Palm Harbor Homes I, L.P., Palm Harbor Homes, Inc., CLW General Contractors, L.C., and Bobby Freeman dba Freeman Mobile Home Moving (collectively referred to as Defendants), respectfully stating:

### Parties, Jurisdiction, and Venue

1. Plaintiffs are individuals residing in Harris County, Texas.

2. Palm Harbor Manufacturing, L.P. (Palm Harbor Manufacturing) is a Texas limited partnership, which is doing business in Harris County, Texas, and which may be served with process by and through its registered agent, CT Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201.

Palm Harbor Homes I, L.P. dba Palm Harbor Villages (Palm Harbor Villages) is a Texas limited partnership, which is doing business in Harris County, Texas, and which may be served with process by and through its registered agent, CT Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201.

CK # 1250

Palm Harbor Homes, Inc. dba Palm Harbor Villages (Palm Harbor Villages) is a Texas corporation, which is doing business in Harris County, Texas, and which may be served with process by and through its registered agent, CT Corporation System, at 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201.

CLW General Contractors, L.C. (CLW) is a Texas limited liability company, which is doing business in Harris County, Texas, and which may be served with process by and through its registered agent, Shawn C. Goodrum, at 27071 FM 1485, New Caney, Texas 77357.

Bobby Freeman dba Freeman Mobile Home Moving (Freeman) is an individual residing in Fort Bend County, Texas, who may be served with process at 5130 Hwy 36 S, Rosenberg, TX 77471.

3. Federal question jurisdiction is proper under 28 USC §§ 1331 and 1343. Also, jurisdiction for declaratory action is proper under 28 USC §§ 2201, 28 USC §§ 2202, and Rule 65 of the Federal Rules of Civil Procedure.

4. Pursuant to 28 USC § 1391, a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in Harris County, Texas. Therefore, venue is proper in Harris County, Texas.

### Factual Background

5. Plaintiffs incorporate paragraphs 1 through 4 as if fully restated.

6. On or about February 19, 2004, Plaintiffs and Palm Harbor Villages entered into a contract (the Contract) for the purchase of a triple-wide modular home model number 76F8 (the Manufactured Home). Palm Harbor Manufacturing is the manufacturer of the Manufactured Home. Palm Harbor Villages is the retailer of the Manufactured Home.

2

7. Prior to the purchase of the Manufactured Home, Palm Harbor Manufacturing and Palm Harbor Villages presented Plaintiffs with a model of the Manufactured Home, which did not contain defects.

8. Prior to the purchase of the Manufactured Home, Tim Foster, a representative of Palm Harbor Villages, made certain representations to Plaintiffs. These included without limitation:

    a. that the home that Plaintiffs would receive would be exactly like the model that was present at the model home facility, except for the upgrades that Plaintiffs would receive;

    b. that the home would be built to withstand hurricane strength winds, as evident by photographs presented at the model home facility;

    c. that the Manufactured Home would be closely examined to ensure proper installation, tight seal and smooth performance;

    d. that the Manufactured Home would be properly sealed at the mating lines from tope-to bottom and end-to-end, and that any repairs would be made adhering to factory requirements;

    e. that the home was warranted against, among other things, structural defects;

    f. that certain materials would be provided with the Manufactured Home; and

    g. that certain materials could not be used for the garage to the Manufactured Home.

These representations were false. These representations were part of Palm Harbor Homes and Palm Harbor Villages' standard written materials and/or publications. Further, upon information and belief, except for item (a) and (b), Palm Harbor Manufacturing is aware of these representations and has adopted these representations.

9. Prior to the purchase of the Manufactured Home, Clint Wilkinson, a representative CLW, made certain representations to Plaintiffs. These included, among possibly other things

3

that certain materials could not be used for the garage to the Manufactured Home. These representations were false.

10. Palm Harbor Manufacturing and Palm Harbor Villages are involved in "commerce" as defined by the Magnuson-Moss Act.

11. In 2004, Plaintiffs began to notice problems with the manufacture and installation of the Manufactured Home. These problems included without limitation water intrusion from the roofing system of the Manufactured Home. Plaintiffs provided written notice of these problems to Defendants on several occasions.

12. Palm Harbor Manufacturing and Palm Harbor Villages provided certain documents with the closing of the Contract (the Closing Documents).

13. Such documents include without limitation certain arbitration provisions. A document entitled "Arbitration Provision-TX" includes the following:

> The parties to the Earnest Money Contract, Retail Installment Contract or Cash Sale Contract agree that any and all controversies or claims arising out of, or in any way relating to, the Earnest Money Contract, Retail Installment Contract or Cash Sale Contract or the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranty (express or implied), repair or sale/disposition of the home which is the subject of the Earnest Money Contract, Retail Installment Contract or Cash Sale Contract, whether those claims arise from or concern contract, warranty, statutory, property or common law, will be settled solely by means of binding arbitration before the American Arbitration Association (AAA) in accordance with the rules and procedures of the AAA and applicable state law. (Emphasis added).

A document entitled "Palm Harbor Homes, Inc. and Subsidiaries new Homes –

Warranties and Notices" includes the following:

> In the event of any dispute or claim, arising out of, or in connection with the design, construction, warranty or repair of any product or component supplied by the manufacture, the condition of the product, the conformity of the product, the merchantability of the product, whether such product is or is not "new", any representations, promises, undertakings, or covenants made or allegedly made by

4

the manufacturer in connection with or arising out of any transaction or undertaking between the manufacturer and any direct or subsequent purchase, the manufacturer and the purchase of this product agree to submit any dispute or claim to binding arbitration pursuant to the provisions of 9 USC 1, et. seq. and according to the applicable American Arbitration Association rules then in existence.

The arbitration provisions are collectively referred to as the Arbitration Provisions.

14. The Arbitration Provisions, along with all other arbitration provisions provided by Defendants, violate the federal Magnuson-Moss Act. Further, the arbitration provisions and the acts of Palm Harbor Manufacturing and Palm Harbor Villages are unconscionable for, among other reasons, (a) they fail to disclose arbitration costs to Plaintiffs, (b) they purportedly require Plaintiffs to make payment of certain arbitration costs, (c) they fail to disclose the rights of Plaintiffs with the Texas Department of Housing and Community Affairs, (c) they limit Plaintiffs' rights to select an arbitrator, and (d) they do not identify Plaintiffs' rights under the Magnuson-Moss Act.

15. The following documents, among possibly others, were not provided to Plaintiffs as part of the Closing Documents:

    a.   a separate warranty from Palm Harbor Villages;

    b.   notice that (1) the Manufactured Home was not designed or constructed to withstand a hurricane force wind occurring in a Wind Zone II or III area (as defined by the Texas Manufactured Housing Act); (2) installation of the Manufactured Home is not permitted in a Wind Zone II county in the State of Texas; and another state may prohibit installation of the home in a Wind Zone II or III area; and

    c.   the installation manual for the Manufactured Home.

16. On or about August 4, 2004, and May 10, 2004, Plaintiffs notified Palm Harbor Manufacturing of water intrusion into the Manufactured Home. On or about August 4, 2004, and May 10, 2004, Plaintiffs notified Palm Harbor Villages of water intrusion into the Manufactured

5

Home.  Palm Harbor Manufacturing attempted to make repairs to the Manufactured Home.  Palm Harbor Villages attempted to make repairs to the Manufactured Home.

17. On or about August 30, 2004, Preferred Inspections made a more complete inspection of the Manufactured Home.  The report of Preferred Inspections provided a more detailed list (the First Inspection Report) of items that required repair to the Manufactured Home.  On or about September 21, 2004, Plaintiffs provided written notice to Palm Harbor Manufacturing of the items set forth in the First Inspection Report.  On or about September 21, 2004, Plaintiffs provided written notice to Palm Harbor Villages of the items set forth in the First Inspection Report.  The First Inspection Report contained, among other things, a complaint that the Manufactured Home was suffering water intrusion.  On or about November 24, 2004, Plaintiffs provided written notice to Palm Harbor Manufacturing of the damage that Plaintiffs were suffering.  On or about November 24, 2004, Plaintiffs provided written notice to Palm Harbor Villages of the damage that Plaintiffs were suffering.  On or about November 24, 2004, Plaintiffs requested documents from Palm Harbor Manufacturing relating to the Manufactured Home.  On or about November 24, 2004, Plaintiffs requested documents from Palm Harbor Villages relating to the Manufactured Home.  Neither entity provided the documents requested.

18. On or about December 2, 2004, Plaintiffs provided written notice to Palm Harbor Manufacturing of the continued water intrusion. On or about December 2, 2004, Plaintiffs provided written notice to Palm Harbor Villages of the continued water intrusion.  These notices included a request for an immediate inspection of the Manufactured Home.

19. On or about December 3, 2004, Palm Harbor Manufacturing and Palm Harbor Villages first inspected the Manufactured Home.  On December 3, 2004, Palm Harbor

6

Manufacturing and Palm Harbor Villages attempted to repair the water intrusion from the roofing system of the Manufactured Home.  Among possibly other things:

    a.  the repairs modified the Manufactured Home and were not performed in accordance with manufacturing standards;

    b.  before commencement of the work, the repairs were not submitted to the appropriate governmental entity, nor properly approved; and

    c.  the repairs were not performed in a good and workmanlike manner.

20. On or about December 8, 2004, Plaintiffs filed a complaint with the Texas Department of Housing and Community Affairs (TDHCA).  On or about January 12, 2005, James Henley of TDHCA inspected the property.  The TDHCA identified, among others, the following individuals as present at the inspection:  (a) John Abel, with Palm Harbor Manufacturing, (b) Max Brill, a representative of Palm Harbor Villages, and (c) Bobby Freeman, a representative of the Freeman Mobile Home Moving.  These individuals were present during the inspection and inspected the Manufactured Home.

21. On or about January 27, 2005, James Henley of the TDHCA provided a report of certain items to be corrected.  Most, if not all, of these items have not been corrected by any of the Defendants.

22. Freeman, a subcontractor of Palm Harbor Manufacturing and/or Palm Harbor Villages, provided material and labor to install the Manufactured Home.  The materials and labor were not installed in a good and workmanlike manner.

23. CLW, a subcontractor of Palm Harbor Manufacturing and/or Palm Harbor Villages, provided material and labor for the Manufactured Home and the garage under CLW's contract with Palm Harbor Manufacturing and/or Palm Harbor Villages.  The material and labor were not provided in a good and workmanlike manner.  In fact, the garage will have to be razed and replaced.

7

24. Plaintiffs have provided Defendants with written notice of extensive defects and/or deficiencies in the Manufactured Home and the garage (collectively, the Warranty Items). Defendants, separately and collectively, have not repaired or otherwise corrected the Warranty Items.

25. Palm Harbor Manufacturing and Palm Harbor Villages were obligated to provide proper design of the Manufactured Home and proper training for the installation of the Manufactured Home. Palm Harbor Manufacturing and Palm Harbor Villages failed to provide proper design of the Manufactured Home and proper training in the installation of the Manufactured Home.

26. Palm Harbor Manufacturing, Palm Harbor Villages, and Freeman are aware of other manufactured homes that are the same or similar to the Manufactured Home that have had complaints about the roofing structure. Accordingly, these defendants are aware or should have been aware that the Manufactured Home was improperly designed and/or manufactured.

## Declaratory Action

27. Plaintiffs incorporate paragraphs 1 through 26 as if fully restated.

28. The Closing Documents contain certain arbitration provisions. Plaintiffs seek a declaration that the Arbitration Provisions are unenforceable because:

    a.   they violate the Magnuson-Moss Act; and
    b.   they involve unconscionability as against Plaintiffs.

29. Plaintiffs seek a declaration that the arbitration provisions are unenforceable.

## Breach of Contract

30. Plaintiffs incorporate paragraph 1 through 26 as if fully restated.

31. Plaintiffs contracted with Palm Harbor Villages for the sale and installation of the Manufactured Home and a garage. Pursuant to the terms and conditions of the agreement between Plaintiffs and Palm Harbor Villages, Palm Harbor Villages was and is obligated to perform Palm Harbor Villages' promises and obligations under the Contract. Palm Harbor Villages has failed to perform its promises and obligations, by among possibly other things,

    a. failing to properly train and supervise the installation of the Manufactured Home;
    b. failing to provide materials that were proper for installation and/or required under the Contract between Plaintiffs and Palm Harbor Villages;
    c. failing to install the materials in a good and workmanlike manner;
    d. failing to provide warranty work timely; and
    e. failing to provide warranty work in a good and workmanlike manner.

Palm Harbor Villages has breached the Contract. Accordingly, Palm Harbor Villages is liable to Plaintiffs for the damages arising out of Palm Harbor Villages' breach of the Contract. Plaintiffs have made demand upon Palm Harbor Villages for performance under the Contract. However, Palm Harbor Villages has failed and refused and continues to refuse to perform its obligations under the Contract.

32. Plaintiffs have performed all conditions precedent to recovery under the agreement.

33. Defendant's acts and omissions are a breach of the Contract, which have caused actual damages to Plaintiffs in excess of the minimum jurisdictional limits of this Court.

34. As a result of the above and foregoing, Plaintiffs have been required to employ legal counsel to prosecute this suit. Pursuant to the terms of Texas Civil Practice & Remedies Code § 38.001 *et seq*, Plaintiffs are entitled to recover reasonable and necessary attorneys' fees from Defendant.

### Violation of Deceptive Trade Practices Act

35. Plaintiffs incorporate paragraphs 1 through 34 as if fully restated.

36. Plaintiffs are consumers under the Texas Deceptive Trade Practices Act (the "DTPA"). Defendant's representations were false, misleading, and deceptive. Accordingly, they violate §17.46(b) of the Texas Business and Commerce Code (the "DTPA") because Defendant:

    a.  represented that Defendant's services had characteristics and benefits which they did not have; and

    b.  represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;;

    c.  represented that a guarantee or warranty confers or involves rights or remedies which it does not have or involve;

    d.  breached its warranty to Plaintiffs;

    e.  engaged in unconscionable actions or course of action; and

    f.  failed to disclose information concerning goods or services which was known at the time of the transaction with the intent that failure to disclose would induce Plaintiffs into this transaction which Plaintiffs would not have entered had the information been disclosed.

37. Defendant's conduct was and is a producing cause of actual damages to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court.

38. Defendants' conduct as described above was committed knowingly; that is, Defendant was actually aware of the falsity, deception, and unfairness of Defendant's conduct. Accordingly, Defendant is liable to Plaintiffs for additional damages as provided by the DTPA.

39. Plaintiffs have provided Defendant with the notices which are required pursuant to the DTPA and/or such notices are not required as provided by the DTPA.

40. As a result of the above and foregoing, Plaintiffs has been required to employ legal counsel to prosecute this lawsuit. Pursuant to the terms of the DTPA, Plaintiffs are entitled to recover reasonable and necessary attorneys' fees from Defendant.

## Breach of Warranty

41. Plaintiffs incorporate paragraphs 1 through 40 as if fully restated.

42. Defendants owed a duty to Plaintiffs to, among possibly other things, to provide a warranty and to provide the materials and labor to the Manufactured Home and garage under the warranty in a good and workmanlike manner. Defendants breached this duty owed to Plaintiffs.

43. Defendants' breach of the duty has caused actual damages to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court.

## Negligence

44. Plaintiffs incorporate paragraph 1 through 26 as if fully restated.

45. Defendants owed Plaintiffs a duty under the laws of the State of Texas. Defendants breached this duty.

46. Defendant's breach of its duty has caused damages to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that citation issue and be served on Defendant requiring Defendant to appear and answer herein; that upon consideration hereof by the Court or the jury, Defendant have and recover judgment of, from and against Defendant as follows:

1. Rescission of the contract and restitution, or in the alternative, actual damages in an amount in excess of the minimum jurisdictional limits of this Court;
2. Statutory and/or exemplary damages;
3. A declaration as set forth in this pleading;
4. Reasonable and necessary attorneys' fees;
5. Costs of Court herein expended; and
6. Prejudgment and postjudgment interest; and

for such other and further relief, both general and special, at law and in equity, to which Plaintiffs are justly entitled.

11

Respectfully submitted,

LAW OFFICE OF KEITH D. PETERSON,
CPA, J.D.

_Kb Peterson_

Keith D. Peterson
Texas State Bar No. 15836050
11110 N Eldridge Pkwy
Houston, TX 77065
(281) 970-7001
(281) 970-7006 (facsimile),
keith@txbusinesslaw.com

ATTORNEY FOR JAMES MOODY AND
COLLEEN MOODY